# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# CHARLESTON DIVISION

HANNAH KNOUSE, et al.,

        Plaintiffs,

v.                                    CIVIL ACTION NO. 2:18-cv-01014

PRIMECARE MEDICAL OF WEST VIRGINIA, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court are defendants West Virginia Regional Jail and Correctional Facility Authority ("WVRJA") and Brad Douglas' Motion to Dismiss [ECF No. 32] and defendant James Chandler's Motion to Dismiss [ECF. No. 34] pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*. Because the factual matter, legal standards, and arguments of these motions overlap, the court has decided them together. For the reasons discussed below, the Motions are **GRANTED in part** and **DENIED in part**.

I.     Factual Background

Hannah Knouse brings her Complaint, as administrator of Dr. Charles Knouse's estate, for relief arising from the decedent's death while in custody at South Central Regional Jail in Kanawha County, West Virginia. She alleges, inter alia, that the defendants failed to adequately provide certain medical care and

attention to Dr. Knouse while he was incarcerated, resulting in his death. *See* Compl. 19; [ECF No. 1].

Dr. Knouse was arrested on a forty-count federal indictment, including charges for distribution and manufacturing of controlled substances. Compl. Ex. A at 6; [ECF No. 1-1]. At his Initial Appearance before Magistrate Judge Omar J. Aboulhosn, Dr. Knouse detailed serious concerns over his medical treatment since being incarcerated. *Id.* at 8. Dr. Knouse began by explaining that South Central was not meeting his serious medical needs. *Id.* Among these included a life-threatening heart condition that leads to a fatal arrhythmia if not treated with medication. *Id.* at 11. He stated that he suffered from rapidly progressing congestive heart failure, which also required medication. *Id.* He explained that because he was required to self-catheterize, he was unable to urinate for the first two days after arriving in prison and had not been given the opportunity to do so. *Id.* Additionally, he explained that he was on a prescription of suboxone and that if he did not resume his treatment, the withdrawal from the suboxone would prevent his heart medication from being able to control his heart rhythm. *Id.* at 16. Lastly, he explained that he needed to resume his herpes treatment to prevent oral outbreaks. *Id.* at 11.

Dr. Knouse also elaborated on the conditions of his confinement: he stated that he was nearly naked while wearing only a safety smock, a "pickle suit," that he had to hold closed with his hands. Compl. Ex. A at 10. He also stated that he was

otherwise on bare concrete and did not receive a blanket until after his first few days in prison. *Id.* at 10–11.

In light of those serious concerns, the Magistrate Judge ordered the authorities of the South Central Regional Jail to (1) "immediately place and hold [Dr. Knouse] in the medical unit"; (2) "immediately resume [him] on all of his prescribed medications"; and (3) "immediately treat [him] for Herpes." Compl. Ex. B at 2; [ECF No. 1-2].

On August 7, 2017, authorities moved Dr. Knouse to a mainline housing unit, contrary to the Magistrate Judge's Order to keep him in a medical unit. Compl. 5. On August 12, 2017, Dr. Knouse was moved again and placed on suicide watch. *Id.* at 6. At 12:45 a.m., Dr. Knouse requested to speak with medical staff at his cell door. *Id.* He told staff that he was suffering from chest pain and that his resting heart rate kept dropping dangerously low to approximately twenty beats per minute. Compl. Ex. D at 5 [ECF No. 1-4]. Prison and medical personnel purportedly believed that Dr. Knouse was stable and did not provide any emergency medical care or alert the medical doctor of his condition, despite their awareness of Dr. Knouse's coronary artery disease and ongoing chest pains. *Id.*

At approximately 5:45 a.m., Dr. Knouse's cellmate alerted defendant Chandler that Dr. Knouse was unresponsive. Compl. 6. Prison personnel attempted CPR, but at 6:18 a.m., Dr. Knouse was pronounced dead. *Id.* As a result of the staff's failures, defendant Chandler and three Primecare Medical employees were terminated. *Id.* at 8.

3

On June 7, 2018, the plaintiff filed her Complaint in the United States District Court for the Southern District of West Virginia. The Complaint names ten defendants, including defendants WVRJA, Douglas, and Chandler ("Prison Defendants"). It alleges counts of negligence; medical professional negligence; violation of the West Virginia State and United States Constitutions; intentional infliction of emotional distress; fraud and civil conspiracy; negligent hiring, retention, and supervision; punitive damages; waiver of governmental immunity and punitive damages; violations of the Americans with Disabilities Act; and Civil Rights violations and constitutional violations through 42 U.S.C. § 1983. On June 26, 2018, defendants WVRJA and Douglas moved to dismiss for failure to state a claim and asserted defenses of immunity, and on July 27, 2018, defendant Chandler moved to dismiss on the same grounds.

## II. Legal Standard

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Rule 8 requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). As the Supreme Court stated in *Ashcroft v. Iqbal*, that standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions,

4

and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly,* 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986) for the proposition that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'"). A court cannot accept as true legal conclusions in a complaint that merely recite the elements of a cause of action supported by conclusory statements. *Iqbal,* 556 U.S. at 677–78.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly,* 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable, and those facts must be more than merely consistent with the defendant's liability to raise the claim from possible to plausible. *Id.*

III. Discussion

The plaintiff's counsel has alleged numerous "counts" against the defendants, arising under both federal and state law. The following discussion begins with the federal claims and concludes with the state claims.

1. 42 U.S.C. § 1983

The defendants argue, and the plaintiff concedes, that § 1983 does not apply to the WVRJA or to Douglas and Chandler in their official capacities. Indeed, the Supreme Court has found that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 60 (1989).

The WVRJA is a West Virginia State Agency. *See* W. VA. CODE ANN. § 31-20-3 (West 2018). Additionally, Douglas, the jail administrator, and Chandler, a correctional officer, are agents of the WVRJA. Consequently, the plaintiff's Counts alleging constitutional violations under § 1983 against the WVRJA and against defendants Douglas and Chandler in their official capacities fail. Therefore, Count III (as it applies to the United States Constitution), and Count X against the WVRJA and defendants Douglas and Chandler in their official capacities are **DISMISSED**.

Nevertheless, while Douglas and Chandler are not "persons" within the meaning of § 1983 in their official capacities, "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983." *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Consequently, the court must decide whether defendants Douglas and Chandler are protected by qualified immunity.

### 2. Qualified Immunity for § 1983

Defendants Douglas and Chandler argue that despite being "persons" in their individual capacity, they are, notwithstanding, immune from liability. Officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson*

*v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Id.* at 741. This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The court's "first task is to identify the specific right that [the plaintiff] asserts was infringed by the challenged conduct, recognizing that the right must be defined at the appropriate level of particularity." *Winfield v. Bass*, 106 F.3d 525, 530 (4th Cir. 1997) (en banc).

### a. Due Process Under the Fourteenth Amendment

The plaintiff has alleged a confused assortment of purported constitutional violations referring variously to Dr. Knouse's First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Only with the utmost charity can the plaintiff's Complaint be referred to as inartfully pleaded. While it is unclear and deficient in many respects, it is more than plain that there is a Fourteenth Amendment claim for deliberate indifference to Dr. Knouse's serious medical needs. Rule 8(e) mandates that "[p]leadings must be construed so as to do justice." FED. R. CIV. P. 8. Moreover, all sections of the Complaint incorporate all other allegations from the Complaint, which the rules plainly permit. *See* FED. R. CIV. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading . . . ."). And unlike the plaintiff's state law claims (discussed *infra*), the Complaint sufficiently states a claim for relief under the Fourteenth Amendment.

7

The plaintiff has alleged that the defendants were deliberately indifferent to Dr. Knouse's serious medical needs in violation of the Due Process Clause of the Fourteenth Amendment.

Under the Fourteenth Amendment's Due Process Clause, pretrial detainees, like convicted prisoners under the Eight Amendment, are protected against "cruel and unusual punishment." *E.g., Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). Importantly, however, the Fourth Circuit has held that the rights for pretrial detainees under the Fourteenth Amendment are even greater than the rights of convicted criminals under the Eighth Amendment. *See Cooper v. Dyke*, 814 F.2d 941, 948–49 (4th Cir. 1987). While deliberate indifference is sufficient to show a due process violation under the Fourteenth Amendment, it "imposes a heavier burden on the [unconvicted detainee] than [is] necessary." *Id.* at 948. "While the convicted prisoner is entitled to protection only against punishment that is 'cruel and unusual,' the pretrial detainee, who has yet to be adjudicated guilty of any crime, may not be subjected to *any* form of 'punishment.'" *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). "[A] pretrial detainee . . . need[] only [] prove that he was punished, in contravention of the Fourteenth Amendment, rather than that he was punished in a cruel and unusual manner, in violation of the Eighth Amendment." *Cooper*, 814 F.2d at 948–49.

"To establish that a particular condition or restriction of [Dr. Knouse's] confinement is constitutionally impermissible "punishment," the pretrial detainee

8

must show either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Martin*, 849 F.2d at 870 (citing *Bell v. Wolfish*, 441 U.S. 520, 538–40 (1979)).

At a minimum, the plaintiff can make out a due process violation if she shows "'deliberate indifference to serious medical needs' within the meaning of *Estelle v. Gamble*, 429 U.S. 97 (1976)." *Id.* at 871 (citing *Whisenant v. Yuam*, 739 F.2d 160, 163 n.4 (4th Cir. 1984); *accord Jones v. Johnson,* 781 F.2d 769, 771 (9th Cir. 1986) (finding that Eighth Amendment's cruel and unusual punishment clause provides minimum standard for judging pretrial detainee's due process right to medical care).

The right to be free from deliberate indifference to serious medical needs is clearly established. The "contours [of a constitutional right] 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). But "there is no requirement that the 'very action in question [must have] previously been held unlawful' for a reasonable official to have notice that his conduct violated that right.'" *Id.*

In *Scinto*, the plaintiff was denied critical medicine despite his life-threatening illness and pleas to prison staff. *See id.* at 226, 235. The court was asked to "define the right at issue" under a qualified immunity analysis: The defendant asked the court to frame the analysis as whether it is "clearly established

that a prison medical provider runs afoul of the Eighth Amendment when he does not give one single dose of insulin to a federal inmate, after the inmate becomes angry and hostile . . . , and the doctor implements a plan to monitor the inmate thereafter." *Id.* at 235. But the court rejected such a highly detailed framing. *Id.* at 236.

Instead, the court defined the right in question as "the right of prisoners to receive adequate medical care and to be free from officials' deliberate indifference to their known medical needs." *Id.* at 236. As stated by the Fourth Circuit, "[a] prisoner's right to adequate medical care and freedom from deliberate indifference to medical needs has been clearly established by the Supreme Court and this Circuit since at least 1976 and, thus, was clearly established at the time of the events in question." *Id.*

The Fourth Circuit has repeatedly recognized this clearly established right of pretrial detainees. *See, e.g.*, *Loe v. Armistead*, 582 F.2d 1291, 1294 (4th Cir. 1978) (holding that "deliberate indifference" standard is applicable to pretrial detainees under the Fourteenth Amendment); *Whisenant v. Yuam*, 739 F.2d 160 (4th Cir. 1984) (holding that deliberate indifference standard was proper to show a due process violation under the Fourteenth Amendment); *Cooper v. Dyke*, 814 F.2d 941 (4th Cir. 1987) (going further and finding that "deliberate indifference standard imposes a heavier burden on pretrial detainee than is necessary"); *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) ("A pretrial detainee makes out a due process violation if he shows 'deliberate indifference to serious medical needs' . . . .").

The plaintiff has alleged sufficient factual matter to meet the greater standard—deliberate indifference.

A plaintiff makes out a prima facie case of deliberate indifference when she demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (internal quotation marks omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). Similarly, a prison official's "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

Without question, the plaintiff has stated a prima facie case of deliberate indifference against both defendant Douglas and defendant Chandler. Magistrate Judge Aboulhosn ordered "the authorities of the South Central Regional Jail" to house Dr. Knouse in a medical unit and to continue all of his medications. The defendants failed to do that. Moreover, defendants Chandler and Douglas knew that Dr. Knouse had life-threatening medical issues; Dr. Knouse pleaded with nurses and other prison officials, making plain the urgency of his requests and the seriousness of his condition. He was ignored—which was confirmed by surveillance cameras, contrary to prison medical procedure, and in violation of two court orders.

11

The court finds that the Complaint alleges enough factual matter to state a plausible claim that the plaintiff is entitled to relief for violations of the Fourteenth Amendment. The defendants' motions are **DENIED.** The remaining federal constitutional claims, however, fail to state a claim for relief and are therefore **DISMISSED**.

### 3. The Americans with Disabilities Act

The defendants argue that the plaintiff failed to state a claim under the Americans with Disabilities Act ("ADA"). Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on account of or because of that individual's disability: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "To establish a violation of [the ADA, the plaintiff] must show that: (1) [Dr. Knouse was] a qualified individual with a disability, (2) [he] was discriminated against, excluded from participation in, or denied the benefits of a public entity's services, programs, or activities; and (3) the discrimination, exclusion, or denial of benefits was because of [his] disability.

Here, the plaintiff failed to allege that Dr. Knouse was a qualified individual under the Act. While the plaintiff did make the conclusory statement that "[t]he decedent was a disabled person as defined in the [Act]," the plaintiff did not state any factual matter showing that this was the case, and the court is "not bound to

accept as true a legal conclusion couched as a factual allegation." See *Twombly*, 550 U.S. at 555. Moreover, as noted by the defendants, the plaintiff failed to allege any factual matter stating that the defendants discriminated against Dr. Knouse *because of* his disability. The causation element is missing. Count IX is **DISMISSED**.

### 4. West Virginia State Law Claims

For the reasons that follow, the West Virginia state law claims against the Prison Defendants are dismissed. Including the Prison Defendants, the plaintiff has named three entities and seven individuals as defendants in this lawsuit—ten defendants and ten counts, most asserting multiple legal grounds. As the defendants point out, the Complaint fails to "give the defendant[s] fair notice of what the . . . claim[s against each defendant are] and the grounds upon which [they] rest[]." *Twombly*, 550 U.S. at 545.

The Complaint refers numerously to the defendants in a plural sense as it makes formulaic recitations of the elements of the causes of action (if and when the complaint actually lists the relevant elements). A court cannot accept as true legal conclusions that merely recite the elements of a cause of action supported by conclusory statements. The Complaint fails to state enough factual matter, accepted as true, to bring the defendants' conduct within the scope of the many tort and state constitutional claims. *See Iqbal*, 556 U.S. at 677–78.

The Complaint uses a "shotgun pleading" approach. A complaint that "fails to articulate claims with sufficient clarity to allow the defendant[s] to frame a

13

responsive pleading . . . or [one in which] it is virtually impossible to know which allegations of fact are intended to support which claims for relief" constitutes a "shotgun pleading." *SunTrust Mortgage, Inc. v. First Residential Mortg. Servs. Corp.*, No. 3:12CV162, 2012 WL 7062086, at *7 (E.D. Va. Sept. 11, 2012); *see also Turton v. Va. Dep't of Educ.*, No. 3:14CV446, 2014 WL 12539403, at *2 (E.D. Va. Sept. 23, 2014) ("[T]his Amended Complaint is the quintessential 'shotgun pleading' that . . . is presented in such a conclusory form that it is virtually impossible to ascertain what claims are asserted against which defendants and on what legal basis the respective claims are founded.").

The Rules simply require that a party "state its claims or defenses in numbered paragraphs, *each limited as far as practicable to a single set of circumstances*," FED. R. CIV. P. 10 (emphasis added), and they require "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The plaintiff has failed to follow these simple guidelines.

Among the hodgepodge of claims for relief, paragraph fifty-seven, for example, alleges that *all* of the defendants violated Dr. Knouse's constitutional rights guaranteed under Article II, Sections 1, 5, 10, and 14, and Article XII, Section 1 of the West Virginia Constitution—five constitutional violations in one paragraph. Article XII, Section 1 of the West Virginia Constitution reads as follows:

> "The Legislature shall provide, by general law, for a thorough and efficient system of free schools."

W. VA. CONST. ART. XII, § 1. To assert that this constitutional provision applies to disputed medical treatment and the death of a federal detainee is nonsense.

14

Count II of the Complaint alleges that *all* defendants are liable for Medical Professional Negligence under *West Virginia Code* § 55-7B-6 without stating any factual matter showing that each of the defendants, particularly the Prison Defendants, are "health care providers" or a "healthcare facility" as defined and required by that Act.

The seriousness of the circumstances and the underlying allegations are not lost on the court: A federal detainee with apparently serious medical conditions died while in custody, and the plaintiff alleges that the defendants defied two court orders. Nevertheless, the court **FINDS** that the plaintiff's state law claims against the Prison Defendants fail to state a claim upon which relief may be granted.

IV. Conclusion

The court **ORDERS** that the § 1983 claims against defendants Douglas and Chandler in their official capacities and against the WVRJA be **DISMISSED with prejudice.** The motion to dismiss the § 1983 claim for violations of the Fourteenth Amendment against defendants Douglas and Chandler in their individual capacities is **DENIED**. The remainder of the Complaint against the WVRJA, Douglas, and Chandler is **DISMISSED without prejudice**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: September 24, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE