IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

HANNAH KNOUSE, et al.,

    Plaintiffs,

v.                      CIVIL ACTION NO. 2:18-cv-01014

PRIMECARE MEDICAL OF WEST VIRGINIA, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant James Chandler's Motion to Dismiss [ECF No. 91] and the plaintiff's Motion to Seal [ECF No. 107]. For the following reasons, Defendant Chandler's Motion is **GRANTED in part** and **DENIED in part**, the plaintiff's Motion is **DENIED**.

### I. Background

While awaiting trial, Dr. Charles Knouse was detained at South Central Regional Jail ("SCRJ") in Kanawha County, West Virginia, for various violations of the Controlled Substances Act. At his detention hearing, Dr. Knouse explained to Magistrate Judge Omar J. Aboulhosn his belief that the jail authorities at SCRJ were not meeting his serious medical needs. Dr. Knouse was apparently concerned that his heart would become arrhythmic if he did not receive his heart medication. He also explained that withdrawal from a second medication would render the first

medication unable to control his heart rhythm, and he detailed the great pain he was in because the jail authorities did not allow him to self-catheterize the first few days of his detainment.

Perceiving a potential life-threatening situation, and choosing to err on the side of caution until Dr. Knouse's medical conditions could be verified, Magistrate Judge Aboulhosn ordered the authorities at SCRJ "to immediately place and hold [Dr. Knouse] in the medical unit . . . and to immediately resume [Dr. Knouse] on all of his prescribed medications." Order 2, *United States v. Knouse*, No. 1:17-mj-00046 (Aug. 4, 2017), [ECF No. 6]. A few days later, however, Dr. Knouse died while in custody. Hannah Knouse, administrator of his estate, filed this lawsuit.

The plaintiff's initial Complaint alleged, inter alia, that the defendants were deliberately indifferent to Dr. Knouse's serious medical needs. On a Motion [ECF No. 32], the court dismissed most of the Complaint but allowed the plaintiff's § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment to move forward. The court noted the plaintiff's lack of factual matter stating claims to relief, conclusory statements, and inapposite legal theories. On October 23, 2018, with leave of court, the plaintiff filed an Amended Complaint [ECF No. 71], largely ignoring the court's guidance on pleading. The Amended Complaint continues to include irrelevant state constitutional claims with no factual basis, contains even more conclusory statements, and entails 275 pages of appended exhibits.

The Amended Complaint sounds in negligence, intentional infliction of emotional distress, state and federal constitutional claims, and fraud. Specifically, it

alleges that Defendant Chandler was the officer on duty tasked with supervising Dr. Knouse the night of his death and that, despite warnings and pleas from Dr. Knouse, he and others were deliberately indifferent to Dr. Knouse's serious medical needs. On November 6, 2018, Defendant Chandler moved to dismiss the claims against him [ECF No. 91]. On November 20, 2018, the plaintiff responded [ECF No. 108] and filed a Motion to Seal [ECF No. 107] requesting that the court seal the plaintiff's response. On November 27, 2018, the defendant replied [ECF No. 112]. The Motions are ripe for review.

## II. Legal Standard

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Rule 8 requires that pleadings contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555. A court cannot accept as true legal conclusions in a complaint that merely recites the elements of a cause of action supported by conclusory statements. *Iqbal*, 556 U.S. at 677–78.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable, and those facts must be more than merely consistent with the defendant's liability to raise the claim from possible to plausible. *Id.*

III. Discussion

1. Motion to Seal

As a threshold matter, in response to the defendant's Motion, the plaintiff attached the defendant's termination letter from the Jail Authority, which is purportedly subject to a confidentiality agreement between the parties. The plaintiff moved the court to seal its response and the attached letter.

Local Rule 26.4(c)(2) requires that

> a motion to seal shall be . . . accompanied by a memorandum of law which contains:
>
> (A) the reasons why sealing is necessary, including the reasons why alternatives to sealing, such as redaction, are inadequate;
>
> (B) the requested duration of the proposed seal; and
>
> (C) a discussion of the propriety of sealing, giving due regard to the parameter of the common law and First Amendment rights of access as interpreted by the Supreme Court and our Court of Appeals.

LR Civ. P. 26.4(c). Counsel failed to address these concerns or file a memorandum. The plaintiff's Motion to Seal is **DENIED**.

2. Section 1983 Qualified Immunity

The plaintiff alleges that Defendant Chandler was deliberately indifferent to Dr. Knouse's serious medical needs in violation of the Fourteenth Amendment's Due Process Clause. The defendant argues that he is entitled to qualified immunity and the § 1983 claim against him therefore should be dismissed

Officers are entitled to qualified immunity under 42 U.S.C. § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Id.* at 741. This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The court's "first task is to identify the specific right that [the plaintiff] asserts was infringed by the challenged conduct, recognizing that the right must be defined at the appropriate level of particularity." *Winfield v. Bass*, 106 F.3d 525, 530 (4th Cir. 1997) (en banc). As discussed previously by this court in this case, "[t]he right to be free from deliberate indifference to serious medical needs is clearly established." *Knouse v. Primecare Medical of W. Va.*, 333 F. Supp. 3d 584, 590 (S.D. W. Va. 2018); *Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016). The next step is to consider whether

the plaintiff alleged sufficient factual matter to demonstrate a plausible claim of deliberate indifference.

### a. Deliberate Indifference

An officer is deliberately indifferent to a substantial risk of harm to a detainee when that officer "knows of and disregards" that risk. *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). To be liable, "[d]eliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." *Young v. City of Mt. Rainer*, 238 F.3d 567, 575–76 (4th Cir. 2001). Deliberate indifference is "more than mere negligence," but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835; *Scinto*, 841 F.3d at 226. It "lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (citing *Farmer*, 511 U.S. at 835).

Liability under this standard thus requires two showings: "First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers *should have* recognized it; they actually must have perceived the risk." *Parrish*, 372 F.3d at 303 (citing *Rich v. Bruce,* 129 F.3d 336, 340 n.2 (4th Cir.1997)). Second, "the evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Id.*

6

"As with the subjective awareness element, it is not enough that the official should have recognized that his actions were inappropriate; the official actually must have recognized that his actions were insufficient." *Id.* (citing *Brown v. Harris,* 240 F.3d 383, 390–91 (4th Cir. 2001)).

A plaintiff can make a prima facie case under this standard by showing "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Farmer*, 511 U.S. at 842; *Parrish*, 372 F.3d at 303. "Similarly, a factfinder may conclude that the official's response to a perceived risk was so patently inadequate as to justify an inference that the official actually recognized that his response to the risk was inappropriate under the circumstances." *Parrish*, 372 F.3d at 303. Moreover, a prison official's "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

The plaintiff alleges that the defendant was deliberately indifferent to Dr. Knouse's serious medical needs, in part, because the defendant violated prison protocol. Am. Compl. 13. The defendant argues that "any alleged violations of purported state or internal regulations, rules, policies, and/or concerning the purported 'suicide watch protocol' or any other matter is insufficient to defeat Chandler's entitlement to qualified immunity." Mem. 13 [ECF No. 92]. The defendant

7

cites numerous Fourth Circuit opinions for support. But while an alleged violation of internal policy does not necessarily amount to a constitutional violation, the defendant could not seriously contend that conduct violating the Constitution could not also violate internal prison policies. *Cf. Harper v. Blagg*, No. 2:13-cv-19796, 2015 WL 6509131, at *9 (S.D. W. Va. Oct. 28, 2015) (finding that while "policy directives 'do not . . . establish constitutional minima' and [while] a correctional officer's 'variance' from policy directives 'does not per se establish a violation of [an inmate's] constitutional rights,' "policy directive[s are] instructive and indicate[] that [the defendant's actions] may have been inappropriate under the circumstances.").

Here, on a motion to dismiss, the plaintiff alleged enough facts to show that Dr. Knouse's risk of harm was "well-documented[] or expressly noted by prison officials, and [that] the circumstances suggest that [the defendant] . . . had been exposed to information concerning the risk and thus must have known about it." *See* Farmer, 511 U.S. at 837. Two court orders stated that the Dr. Knouse needed appropriate medical attention. Am. Compl. 6. Defendant Chandler was on duty to supervise the plaintiff while he was housed in booking, i.e., suicide watch. *Id.* Dr. Knouse pleaded incessantly that his medical wellbeing was deteriorating, and the defendant had multiple contacts with Dr. Knouse. *Id.* at 14. The Amended Complaint also alleges that defendant Chandler failed to respond to Dr. Knouse's known medical needs. *Id.* at 14–15. He was allegedly watching YouTube videos and allegedly told Dr. Knouse to "shut up" throughout the night instead of conducting his rounds. *Id.* Defendant Chandler, despite his awareness of Dr. Knouse's issues, failed to monitor

8

him to see that he was not in distress and that he was breathing or to see that medical treatment be provided. *Id.* at 16. As alleged, there is enough factual matter to suggest that Defendant Chandler's response "was so patently inadequate as to justify an inference that the [he] actually recognized that his response to the risk was inappropriate under the circumstances." *Parrish*, 372 F.3d at 303. The plaintiff has alleged "enough factual matter to state a plausible claim that the plaintiff is entitled to relief for violations of the Fourteenth Amendment." *Knouse*, 333 F. Supp. 3d at 591.

3. **State Law Qualified Immunity**

The court will next examine the plaintiff's state law claims. The plaintiff seeks relief under state law for negligence, intentional infliction of emotional distress, fraud, and despite criticism from the court, again alleges "a confused assortment of purported [state] constitutional violations." *Knouse*, 333 F. Supp. 3d at 589. The defendant argues that he is also intitled to qualified immunity on the plaintiff's state law claims.

In West Virginia, "if a public officer is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority, and jurisdiction, he is not liable for negligence or other error in the making of that decision, at the suit of a private individual claiming to have been damaged thereby." Syl. Pt. 4, *Clark v. Dunn*, 465 S.E.2d 374 (W. Va. 1995).

> [T]he doctrine of qualified or official immunity bars a claim
> of mere negligence against a State agency not within the

9

> purview of the West Virginia Governmental Tort Claims and Insurance Reform Act[1] . . . and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.

*Id.* at Syl. Pt. 6. "To determine whether the State, its agencies, officials, and/or employees are entitled to immunity, a reviewing court must first identify the nature of the governmental acts or omissions which give rise to the suit . . . ." Syl. Pt. 10, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751 (W. Va. 2014).

"To the extent that governmental acts or omissions . . . fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Sec., Inc.*, 424 S.E.2d 591 (W. Va. 1992)." *Id.* at Syl. Pt. 11. "In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability." *Id.*

### a. Negligence

The defendant argues that that the plaintiff failed to plead facts sufficient to establish that the defendant did not engage in any discretionary acts, and the plaintiff did not respond otherwise. I agree. In West Virginia, correctional officers' functions "are *broadly* characterized as discretionary, requiring the use of discretionary judgments and decisions." *A.B.*, 766 S.E.2d at 768. Because "[a] public

---

[1] The parties do not dispute that the plaintiff's claims against the Prison Defendants do not fall within the West Virginia Governmental Tort Claims and Insurance Act.

officer is entitled to qualified immunity for discretionary acts, even if committed negligently," the defendant is not liable for mere negligence. *Maston v. Wagner*, 781 S.E.2d 936, 949 (W. Va. 2015); *E.B. v. W. Va. Reg'l Jail*, No. 16-0090, No. 12-0092, 2017 WL 383779, at *6 (W. Va. 2017) ("[S]imple assertions of negligence . . . as explained in syllabus point 7 of *A.B.* are barred . . . ."). As such, the claim of negligence against defendant Chandler is **DISMISSED**.

### b. Intentional Infliction of Emotional Distress ("IIED")

To state a claim to relief for IIED, the plaintiff must show the following:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency;
>
> (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct;
>
> (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and
>
> (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419 (W. Va. 1998).

As a threshold matter, I find that state officials are not immune from conduct meeting the elements of IIED. In *Taylor v. West Virginia Department of Health & Human Resources*, the Supreme Court of Appeals of West Virginia found that "false light invasion of privacy claims . . . –plainly satisfy[] the requirement of 'fraudulent, malicious, or oppressive' activity." 788 S.E.2d 295, 305 (W. Va. 2016). A successful

"false light" claim requires that the actor "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter." *See Travis*, 504 S.E.2d at Syl. Pt. 3. Similarly, in *Cochran v. West Virginia Regional Jail & Correctional Facility Authority*, the district court found that common law battery, an intentional tort, is both "malicious and in violation of a law of which a reasonable person would have known." No. 3:13-10176, 2014 WL 2973486, at *5 (S.D. W. Va. July 2, 2014). Notably, battery in West Virginia requires that "the actor desire to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Funeral Servs. by Gregory, Inc. v. Bluefield Comty. Hosp.*, 413 S.E.2d 79, 82 (W. Va. 1991).

Comparatively, IIED can be committed with intent to cause emotional harm *or* by reckless conduct when the tortfeasor was "certain or substantially certain emotional distress would result." *See id.* at Syl. Pt. 3. This is analogous to both the intent and reckless requirements of false light and the intent requirement of battery. Combined with the outrageousness of the conduct and the severity of the harm required to be proved, I have no trouble finding that IIED, whether intentionally or recklessly caused, is beyond "mere negligence" and plainly falls within the scope of conduct that is "fraudulent, malicious, or oppressive." *See Chase*, 424 S.E.2d at 600.

Next, the defendant argues that "failing 'to conduct suicide watch protocol in the final hours of Dr. Knouse life while he sat and watched YouTube videos' does not rise to level [sic] of sufficiently outrageous conduct." Mem. 8. (citation omitted). For guidance on "outrageous conduct," the West Virginia Supreme Court relies heavily

on the *Restatement Second of Torts*. *See Tanner v. Rite Aid of W. Va., Inc.*, 461 S.E.2d 149, 156–57 (W. Va. 1995). As the *Restatement* explains, to be liable under IIED, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (Am. Law Inst. 1965). In other words, liability "clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* On the other hand, the extreme and outrageous character of the conduct "may arise from an abuse by the actor of a position . . . which gives him actual or apparent authority over the other, or power to affect his interests." *Id.* § 46 cmt. e. "Whether conduct may reasonably be considered outrageous is a legal question." Syl. Pt. 4, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419 (W. Va. 1998).

I find that as alleged, the defendant engaged in sufficiently outrageous conduct. The plaintiff has asserted throughout the Amended Complaint that the defendant knew of Dr. Knouse's medical issues and the substantial risk of harm they posed and alleges that instead of tending to Dr. Knouse, the defendant ignored him and told him to "shut up." Am. Compl. 14. She alleges that when Dr. Knouse asked for help, the defendant told him "they had tried to wake him earlier [sic.] but he wouldn't, so go away now because they are busy" before proceeding with other personal interests, which included watching videos on Facebook and YouTube. *Id.* 14–15. She also alleges that the defendant failed to conduct suicide watches although Dr. Knouse was "complaining incessantly about his lack of proper medication." *Id.* at

13

18. Furthermore, as the guard on duty, Defendant Chandler was in a position of authority and had the power to affect Dr. Knouse's interests. Taken as true, this conduct encompasses more than "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities"; it is outrageous. As alleged, the claim for IIED survives.

### c. Fraud

To state a claim of fraud in West Virginia, a plaintiff must allege the following:

> (1) that the act claimed to be fraudulent was the act of the defendant or induced by him;
>
> (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and
>
> (3) that he was damaged because he relied upon it.

Syl. Pt. 1, *Lengyel v. Lint*, 280 S.E.2d 66 (W. Va. 1981).

As the defendant points out, the only allegations of fraud involve other defendants altering medical logs. The plaintiff fails, however, to allege that Defendant Chandler, as opposed to PrimeCare defendants, altered any logs. In response, the plaintiff argues that the fraud against Defendant Chandler is based on paragraph 59 of the Amended Complaint and video surveillance. But the only reference in paragraph 59 to Defendant Chandler is him telling Dr. Knouse to "shut up" and return to his bunk and to "go away now because they are busy." This is insufficient to state a claim of fraud. Moreover, the plaintiff has failed to plead her fraud claim against Defendant Chandler with particularity, as required by Rule 9(b) of the *Federal Rules of Civil Procedure*.

14

### d. State Constitutional Claims

The plaintiff, again, alleges that the defendant "violated Dr. Knouse's constitutional rights guaranteed under Article III, Sections 1, 5, 10, and 14, and Article XII, Section 1 of the West Virginia Constitution—five constitutional violations in one paragraph." *Knouse*, 333 F. Supp. 3d at 593; *see* Am. Compl. 20; *see also* Compl. 11 [ECF No. 1]. "To prove that a clearly established right has been infringed upon, a plaintiff must do more than allege that an abstract right has been violated. Instead, the plaintiff must make a 'particularized showing' that a 'reasonable official would understand that what he is doing violated that right' or that 'in the light of preexisting law the unlawfulness' of the action was 'apparent.'" *Hutchison v. City of Huntington*, 479 S.E.2d 649, 659 n.11 (W. Va. 1996) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Because a "particularized showing" is inherently lacking, the plaintiff has failed to allege enough facts to state a claim to relief on any of these claims.

While the plaintiff's state constitutional claims fail because they lack a particularized showing, Article III, Sections 1, 5, and 10 also fail as a matter of law. First, Article III Section 1 does not independently give rise to a cause of action. *Murray v. Matheney*, No. 2:13-cv-15798, 2017 WL 4849113, at * 8 (S.D. W. Va. Oct. 26, 2017) (Goodwin, J). Second, "if a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Spry v. West Virginia*, No. 2:16-cv-0178, 2017 WL 440733, at *6 (S.D. W.

15

Va. Feb 1, 2017) (applying this federal standard to the West Virginia Constitution). Thus, the plaintiff's claim under Section 10 is properly analyzed under Section 5's prohibition against "cruel and unusual punishment." *See Murray*, 2017 WL 4849113, at *8. Under Section 5, however, money damages are unavailable. *S.M.B. v. W. Va. Reg'l Jail*, No. 3:17-1300, 2017 WL 3841894, at *4 (S.D. W. Va. Sept. 1, 2017) (collecting cases); *accord Murray*, 2017 WL 4849113, at * 8 (Goodwin, J.); *cf.* Syl. Pt. 4, *Harrah v. Leverette*, 271 S.E.2d 322, 324 (W. Va. 1980) (listing the kinds of relief available under Article III, Section 5). Because the plaintiff strictly seeks monetary damages under the West Virginia Constitution, his claim under Section 5 fails.

Accordingly, all state constitutional claims are **DISMISSED**.

### 4. Rule 11—Sanctions

As recently discussed by this court—in this case—in a published opinion—Article XII, Section 1 of the West Virginia Constitution reads as follows:

> "The Legislature shall provide, by general law, for a thorough and efficient system of free schools."

W. Va. Const. Art. XII, § 1. Remarkably, the plaintiff alleged a violation of this constitutional provision for a second time in the Amended Complaint. "To assert that this constitutional provision applies to disputed medical treatment and the death of a federal detainee is [*still*] nonsense." *Knouse*, 333 F. Supp. 3d at 592.

"By presenting to the court a pleading . . . –whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are

16

warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b). "On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b). Fed. R. Civ. P. 11(c)(3). Consequently, the court **ORDERS** the plaintiff's counsel who signed the Amended Complaint to show cause as to why pleading violations of Article XII, Section 1 of the West Virginia Constitution, in two separate pleadings in this litigation, does not violate Rule 11(b).

IV. Conclusion

For the foregoing reasons, Defendant Chandler's Motion to Dismiss [ECF No. 91] is **GRANTED in part and DENIED in part**. Except for the § 1983 claim in violation of the Fourteenth Amendment and the IIED claim, all other claims against Defendant Chandler are **DISMISSED with prejudice**. The plaintiff's Motion to Seal [ECF No. 107] is **DENIED**. Accordingly, the court **ORDERS** that the Motion to Seal [ECF No. 107], the plaintiff's Response [ECF No. 108], and its attachment [ECF No. 108-1] be unsealed.

Further, the plaintiff's counsel is **ORDERED** to show cause why sanctions should not be imposed in accordance with Rule 11. The plaintiff's counsel has **FOURTEEN DAYS** from the filing of this Memorandum Opinion and Order to file a

memorandum. The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: January 17, 2019

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE